May it please the Court. Good morning. I'm Deputy Attorney General Rochelle Holtzman representing Defendant Appellant, the California Department of Corrections. I'd like to reserve two minutes if I could please. Your Honor, at issue here is the policy at Pelican Bay State Prison which banned inmates from receiving, through the mail, internet-generated material. Can I ask something? Yes. If somebody gets one of the Ninth Circuit opinions off the mail and sends it to the prisoner, that's banned? That's correct. Okay. That's correct. That same opinion could be Xeroxed and sent into the prison, but not the version that was downloaded. It does seem rather odd, doesn't it? Well, Your Honor, the reason that CDC is appealing is because the injunction entered by the district court is so broad, especially when it's taken in conjunction with the order that was issued by the court on the same day, and that's on page 338 of the excerpts of record. And that order in particular, went even further than the injunction. It said that, essentially, if it is generated through the internet, CDC can't prevent it from going into the prison. And that, in and of itself, is – appears too broad. So the relief that CDC is requesting is the ability to go back and refashion a policy that works. So you're satisfied if it said that it cannot be banned simply because it's from the internet? I don't think that that – I think that the injunction should be perhaps more narrowly tailored than that. But that's what it says. It says you can't – the policy that prohibits it just because it contains internet – that's the injunction. That's the injunction. Okay. But on page 338 is the accompanying order, and that one doesn't have the because. And I don't have it in front of me. I can certainly get it. But it says that if it's generated from the internet, the prison cannot prohibit it. So arguably, that's the part that would say that even if it's how to make a pipe bomb – Well, you just said that – I just asked you, did that solve the problem? And you said no. But you keep – and then you come back and say, but that's what bothers us. Well, my apologies. Perhaps I misunderstood the question. What CDC would like, as I say, is the opportunity to more narrowly fashion a policy. I know. But that's just a very broad, general statement. You don't like the policy. I'm trying to find out why. Your first statement was that the order doesn't contain the same limitation that the injunction does, that it can't be banned simply because. That I understand. What else is it that bothers you? For example, the injunction covered every prison, including prisons that had no ban on internet-generated material. It does not take into account that prisons have different security concerns. In other words, the Turner analysis may apply differently at Pelican Bay than arguably it would at a low-security medical facility that is run by CDC. In addition – But you really want to litigate this same question, prison by prison, to every prison in California? No, Your Honor. But what I would say is that the evidence that was presented to the district court was primarily an evidentiary hearing and the transcript that is nearly 5 years old. The internet, certainly in 5 years, has evolved and likely will evolve in another 5 years. But you have what, 8 prisons that have this policy? Well, at the time of the injunction, I believe there were 8. But the district court's order also acknowledged that the majority of prisons had no prisons. But as to those 8, you would like to have separate litigation filed in each of those 8? No, Your Honor. But what I would say is that each warden in those – perhaps in those prisons should be able to fashion a policy that would address any internet issues at that  For example, in Thornburg, the warden at the Federal prison was – had the discretion to decide – it was the person who decided what could or couldn't come in in terms of publications. And I think that would be appropriate likewise with California. Well, that's what I'm asking you. You're saying we should limit this to this prison and at the next prison where there's a similar policy, there should be a new lawsuit and that should then be appealed and we should go through it prison by prison, having litigation. The Attorney General must not have a lot to do these days. I wouldn't argue that, Your Honor. However, I would say that this particular case dealt with one prison and one plaintiff and one policy. The injunction, however, was entered and covered all of the prisons. Okay. So that's point two. Point one was the because. Point two is you want it limited to the one prison. That said, that CDC does need the flexibility, even though – I'm certainly not asking for more litigation. But CDC does need the ability to fashion a policy that is appropriate to Pelican Bay and to the gang-related activities that are acknowledged that occur there. But it also needs the ability to fashion a policy that's going to work in all of the prisons, not just – not just Pelican Bay. And for that reason, CDC is asking for the relief to have it remanded to be able to narrow – to narrow the lawsuit. Well, I mean, I don't see how you can come and say, you know, we need to have a new injunction fashioned without saying what it is that's wrong with this. You've given two things so far. But the general statement that we need this flexibility to fashion a new policy doesn't add anything to those two points, as far as I can tell. Those are your two problems. Well, the problem is that CDC does not have the ability with this injunction to be able to go back and make a policy that would be workable or that could evolve. Needless to say, the – I don't think the Internet at Crescent City back in 1999 is – was in 1999 what it is today. But all you're prevented from doing is banning material because it's on the Internet. Is there anything more than that? I'm not sure I understand your question, Your Honor. What are you prohibited from doing? You're saying you can't fashion a policy regarding the Internet. For example – You could fashion a policy that said Internet material could be limited to 50 pages, 20 pages, couldn't you? You could go in and ask for a modification of the injunction presenting the things that you think would make it workable in the prison. There's nothing that prevents you doing that, is there? Well, under the circumstances, because this injunction covers every prison, I think we're going back to the situation of the one injunction being overly broad for all of CDC. I think that that's why I'm – I think that you're in deep trouble when you say that if the injunction said it, you can't ban it simply because it's on the Internet. That's appropriate for all the prisons, I would think. And then whatever modifications you need to meet particular prison conditions, volume of mail, number of pages that should be, that could all be brought by a motion to modify the injunction, couldn't it? I'm not so certain, Your Honor. I would have to go double-check the Federal rules. I am not certain that we could ask for that injunction to necessarily be modified. You might not win, but you certainly could ask. I may not win. But what I would suggest is, for example, CDC may want to fashion a policy that says that there are approved websites, for example, or certain things that come in from websites. Can you give me – where do we find the injunction itself? Because you're arguing with that language, and I don't have it right in front of me. I've got the order. I've got the judgment, but I don't have the injunction language that you say is so offensive. It's in volume two. I believe it's – the order starts on page 307. I know that the offensive – Yes. It's page 338. That's the offensive language. That's the offensive – of the order.  Yes, it's in volume two. I don't have it. Would you like me to find the page? I can certainly do that. I've got that. Okay. And this is the – that's 307. No, that's 300. Okay. Would you like me to find the page, Your Honor?  Okay. If you could find it and pass it up here, it would help us, because I don't have it in front of me. Okay. I don't have that piece of paper with me. I brought the wrong – I brought the judgment, not the injunction. The order starts on page 307. I've got that. Okay. The offensive language is on 338. The injunction itself starts on page 300 of the excerpts of record, volume two.        Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.        Okay. Okay. Okay. Okay. Okay. Can I – I don't think so. Because. No, that's the one she's not – you're not bothered about the page 300 where it says because it contains internet. Because it contains internet. That is the injunction. However, on page 338, which is the order that was with the injunction, defendants are enjoined from enforcing any policy prohibiting California inmates from receiving mail that contains internet-generating materials – internet-generating information. Oh, I see. Okay. So you're reading that to be broader than the judgment. It certainly is broader than the judgment, yes, Your Honor. If we read that as being the same as the judgment, that would solve that problem. Well, I'm not sure it solves the problem. It would solve that – it won't solve all of your problems, but it would solve that problem. What you're saying is if you don't read that consistent with the judgment, it would mean that any material that gets a safe harbor because it comes in on the internet. That's how you're reading that. Absolutely. And it's – and it's on its face. Exactly. Okay. That said, even the injunction, however, I am arguing, is still overly broad in as much as it covers as – The number of prisons, right? The number of prisons. The fact that perhaps as the internet evolves, there may be certain websites that are absolutely – that don't have a security problem. And it may be that there – there becomes more and more information on the internet that is not otherwise available elsewhere. Those things, arguably, CDC may permit into a prison, but it may want to limit other things. Simply because it comes off of the internet should not be a reason why it should be allowed into a prison, regardless. No, that's – it's not simply because it comes off the internet it's allowed in the prison. It can't be banned simply because it comes off the internet. Those are different propositions. No, I do understand. And the injunction and the order address those – that difference. So if we said – okay. So if we said, look, the injunction has to be read consistent with the judgment. That's obviously what the court meant. Therefore, we declare the injunction means that it can't be banned simply because it comes off the internet. The NAC problem goes away. Yes. So then you've got the rest of your case. Then you have the rest of your case. The rest of your case is the number of prisons, right? It's the number of prisons. It's – they are also the security concerns and the inability to trace – to trace various things. And primarily, the ability of CDC to be able to react to what is certainly an evolving phenomenon. And if things become more secure on the internet, some of the security concerns may decrease as, as I say, as things are perhaps more – I really didn't understand that part at all. These prisoners don't have any access to computers. So we're just talking about hard copies of things. Yes. And I mean, so you can make a hard copy of anything in the world, but because you make a hard copy of something that comes off the internet, it's banned. That is really – I don't see the increased security concern over other hard copies of things. It is easier to manipulate something off the internet – that you're downloading off the internet – than if you go and copy it out of, say, the Encyclopedia Britannica. It's harder to insert something in the same font, in the same line, in the same paragraph in something that you're Xeroxing than something that you can manipulate that you've downloaded, for example. So somebody plays with it while it's on the, on the machine and therefore makes a copy of that and it looks better. But everything, you know, there's a lot of hokey information out of there from all kinds of sources. Just because it's now hokey information that you, that you copied from the internet, I mean, what's the difference? Well, hokey isn't the problem. The problem is the encrypted message that says, um, the Aryan Brotherhood is going to kill somebody. That's the problem. Well, somebody can write a letter and use some kind of code in a letter and it has no – it doesn't make any difference. They can write it all in the same ink and they can talk about their parents and their brothers and sisters and that can all be a code for something. It could be. But it's going to be harder to hide something. It takes a lot more effort to handwrite a 10-page letter that you're trying to slip five words in than to download it. So if this was like a factual matter and, you know, you presented all this stuff to the court, apparently the district court didn't buy that you had made any factual case that there was any security problem. Well, certainly the district court entered an injunction. There's no disputing that. Okay. But I mean, that said – that said, again, the district court was relying on an evidentiary transcript from 1999 in a similar case that was a state habeas proceeding up in Del Norte County. And I would – I'm not here complaining that you didn't get an opportunity to make a new record, that you asked to put in a whole bunch of new evidence. You're not saying that you were somehow – there was an abuse of discretion that you were – that she denied hearing something new. I didn't read that. No evidence was entered as to Pelican Bay. However, there was not an indication by the district court that it was going to be a statewide injunction. No evidence was presented as to any other prison. Now you're – I don't remember reading, like, we didn't have – it was inadequate notice, and therefore you would have, you know, asked for this big evidentiary hearing. The district court did ask whether – in fairness, it's in the transcript, it's in the excerpts – the district court did ask whether further evidence wanted to be presented. At that point, however, there – again, there was no indication that this was going to be an injunction against all the other prisons, including prisons that didn't have any policy banning Internet material. So I would say that there certainly was no notice that this was going to be a statewide injunction. There certainly was notice and the opportunity to present evidence as far as Pelican Bay's policy went. Well, when she made it a statewide injunction, did you ask to reopen the record? We did not ask. It was not asked, no, Your Honor. Well, no, a motion for reconsideration was made. I take that back. It was made, yes. And part of it was that you needed to bring in evidence in respect to the other prisons? Well, that certainly would have been part of it. No, no. Did you say that to the district judge, that we want to bring in evidence with respect to the other prisons? Your Honor, I don't recall. I do not recall what the other prisons did. I suspect not, because I think if you had, she would have said, all right, let's have it. That – well, that may have been the case, but it's not one – that's not a question I'm – I can answer, quite honestly. Unless there are any other questions, I see I'm almost. Oh, you're not almost. You have lots of time, but I think you've neared the end of your argument. That's not encouraging, Your Honor. Thank you very much. Thank you. Good morning. Craig Stewart for the Plaintiff and Appellee, and with me is Ann Brick. Let me address the question of the order and the judgment. This issue really wasn't raised in the briefing, that the order – that the order somehow conflicts with the judgment or the injunction, so we haven't presented the cases to the Court on that point. But I believe that the law is clear that the effect of an injunction is determined by the four corners of the injunction. And as the Court has pointed out, the injunction here is clear that it bans only prohibit – prohibit – prohibition of the mail because of the Internet content. And that's the language of the injunction, and that's the language of the judgment both on pages 300 of the excerpts, and 303 is the judgment itself. The order, I don't believe, is relevant to – or could change, even if the order were inconsistent with. I don't think the order could change the language of the – of the judgment or the injunction in terms of the binding effect on the prison system. But I think any reasonable reading of the order would be completely inconsistent with the notion that the judge was prohibiting the prison system from banning mail that comes in that has plans for an escape or a conspiracy to commit murder within the prison system. I'm pretty sure that she didn't mean to give a safe harbor to Internet information. No. I think that's correct, Your Honor. And because the language of the judgment and the injunction controls, and it's so clear, I don't believe that any modification is – is called for here. There are two points, I think, the counsel made that you might want to address your argument to. One is that there's a security problem because it's so easy to slip messages into Internet material and far more difficult to slip messages into other type of material. And the second argument is that this injunction should be limited to the single prison. The first point, Your Honor, I think as Judge Rustani pointed out, coded messages could be slipped into a typewritten document. Counsel pointed out that, you know, it would be difficult in a handwritten document to write out that much or to insert the text in a handwritten document. But the same principle would apply in a typewritten document. You could have a typewritten document of ten pages and have the messages inserted. In fact, it would be easier, I believe, to take a document on a word processing system and insert such text than it would be to insert that into a document that's on the Internet and then print it directly from the Internet. The Department has never been able to explain how someone actually could insert a message into a – into a Web page and then print that out. Now, it is true that you can download documents from the Internet as a – as a word processing document and – and then insert text into that, but that's no different from any other document, letter, article, anything that somebody may submit. And in fact, to demonstrate the irrationality of this regulation, if a document were downloaded from the Internet as a Microsoft Word document, for example, and text inserted, there would be no way to know that that document was downloaded from the Internet. PDF files that come down off the Internet don't have any identifying marks on them that would show that they are from the Internet. So the – the regulation simply doesn't address that kind of danger that the – that the prison is referring to here. And I think the district court correctly concluded that they – they've just not been able to articulate any way in which that could actually happen or any way in which that risk is any greater with these kind of materials as opposed to other kind of materials. And then to address Your Honor's second question about the scope of the injunction, first, there was evidence in the record regarding that the application of this policy not only at Pelican Bay State Prison, but at other prisons around the State, including Stan Quentin, and the inmates there and their efforts to receive Internet-generated material and the application of this regulation to such mail. Having said that, however, the Department has not attempted to defend this regulation on any basis that would suggest that there are different considerations at different prisons throughout the State. The arguments have all been based simply on the nature of Internet mail or Internet – Internet-generated materials that may be included in mail and volume concerns, none of which would be particular to any particular prison within the system. And furthermore, after the judgment was entered, the Department did file a motion to alter or amend the judgment. And in that motion, after they were on notice of the scope of the – of the court's judgment and injunction, there was no indication, and even today, through the appellate briefing and the argument today, there's been no indication of how the considerations that led the Court to conclude that this was an unconstitutional abridgment of the inmates' First Amendment rights would differ at any other prison. In fact, Pelican Bay is the State's maximum security prison. And it – if – there's no reason to believe that a regulation that is unconstitutional there, where the security interests are at their highest, would be more likely to be constitutional at another prison within the State. And then the counsel this morning has referred to the need to be able to take account of the evolving circumstances and to fashion a policy. This injunction allows them to fashion a policy so long as they do it within the scope of the injunction and don't abridge the terms of the injunction. If there are legitimate content issues with respect to materials that – that raise legitimate security concerns, the Department is not prohibited from this – by this injunction from addressing such issues. And I believe that the – you know, the remaining issues that have been briefed, I believe, have been – we've demonstrated in our briefing that the – the Department's other concerns regarding the legitimacy of this regulation are unfounded. And we believe the Superior Court was correct – or the district court was correct in finding that it was arbitrary and unconstitutional, and we urge it to be affirmed. Thank you. Thank you. Your Honor, I would only add that I think counsel makes the point – makes the point for CDC about the need for the flexibility to be able to adjust its policies. He referred to various Internet sites that are very difficult to manipulate or to a PDF document that is equally difficult to manipulate, as opposed to downloading and possibly manipulating something. That's exactly the sort of situation that CDC should be able to fashion a policy to say, this kind of material is perhaps acceptable and is – doesn't really pose much of a security risk, whereas something else may. And that's exactly the sort of policy that CDC should be allowed to be – to have enough flexibility to be able to create a policy that addresses those various things. And indeed, from Turner down to the most recent Overton case, CDC and prison officials are the best ones to be able to address those concerns, and they're the ones that need to do their job with regard to what goes into and out of a prison. So unless there are any other questions, CDC will submit. Thank you, counsel. Thank you. The case just argued is submitted. The next case for oral argument.
judges: B. Fletcher, Reinhardt, Restani